IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Tommy Seymour,                              :

              Plaintiff,               :       Civil Action 2:12-cv-1005

      v.                                   :       Judge Marbley

Carolyn W. Colvin,                          :       Magistrate Judge Abel
Commissioner of Social Security,
              Defendant.               :

## REPORT AND RECOMMENDATION

Plaintiff Tommy Seymour brings this action under 42 U.S.C. §§405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security denying his applications for Social Security Disability and Supplemental Security Income benefits. This matter is before the Magistrate Judge for a report and recommendation on the administrative record and the parties' merits briefs.

**Summary of Issues.** Plaintiff Seymour maintains that he became disabled on August 1, 2008, at age 31, due to a broken right hand and back pain. (*PageID* 220.) Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge failed to accord Dr. Boyd, the long time treating physician, who limited him to a 4 hour work day, the weight of a rebuttable presumption; and

- The vocational expert's testimony of "possible" jobs rather than probable jobs, failed to meet the Commissioner's burden of going forward to establish other work he could perform.

**Procedural History.**  Plaintiff Seymour protectively filed his applications for disability insurance benefits and supplemental security income on March 4, 2010, alleging that he became disabled on August 1, 2008, at age 31.  (*PageID* 191-97, 198-201.) The applications were denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On November 1, 2011, an administrative law judge held a video hearing at which Plaintiff, represented by counsel, appeared and testified.  (*PageID* 82-97.)  A vocational expert also testified. (*PageID* 98-104.)  On December 16, 2011, the administrative law judge issued a decision finding that Seymour was not disabled within the meaning of the Act.  (*PageID* 61-72.) On October 3, 2012, the Appeals Council denied Plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (*PageID* 50-53.)

**Age, Education, and Work Experience.**  Seymour was born on October 20, 1976. (*PageID* 70, 191.)  He only finished school through the 8th grade, but completed his GED ("General Equivalency Diploma").  (*PageID* 221.)  Seymour previously worked as a construction worker and concrete finisher and boring machine operator.  (*PageID* 70, 222.)

**Plaintiff's Testimony.**  The administrative law judge summarized Seymour's testimony as follows:

> [T]he claimant testified that since fracturing his hand, the claimant has
> had difficulty using his right hand, including difficulty holding onto and
> carrying things.  The claimant also testified that he has difficulty writing

2

much- his handwriting will get sloppy and his hand will start bothering him.  Further, the claimant said that his lower back causes problems as well.  He stated that his legs would go numb if he sits for too long and he has trouble bending.  The claimant also testified that his back hurts constantly and the pain is exacerbated with physical activity.  Despite the use of prescription medications, the claimant said the pain is never completely relieved and he continues to have trouble falling asleep.  Additionally, the claimant said he can stand for only 15 to 20 minutes and could walk only a couple blocks.  As for sitting, the claimant said as long as he can move around, he could sit for about 45 minutes, but if he cannot move around and change positions, he will get very stiff  The claimant testified that the difficulty with working is that some days he is able to perform light duty, but on other days he can barely get out of bed.  He stated that he could probably carry only 10 to 15 pounds, but cannot bend or stoop to pick something up and would have difficulty climbing stairs.

(*PageID* 66-67.)

**Vocational Expert Testimony.**  The administrative law judge proposed a series of hypotheticals regarding Seymour's residual functional capacity to the vocational expert.  (*PageID* 100-02.)  Based on Seymour's age, education, and work experience and residual functional capacity, the vocational expert testified that he could "possibly" work as a short-term delivery truck driver, such as soda and beer products which were usually unloaded by the destination company.  (*PageID* 100.)  The vocational expert testified that this job allowed the driver flexibility to schedule time in which to get in and out of the truck.  (*PageID* 100-01.)  The vocational expert testified that 3,375,100 such positions existed in the national economy.  (*PageID* 101.)  The vocational expert also testified that the hypothetical individual could "possibly" work in landscaping performing on site lawn mowing which was light and unskilled, and also gave some scheduling flexibility, with 1,520,600 jobs in the national economy.  (*PageID* 101.)

3

When cross-examined by Seymour's counsel, the vocational expert testified that the requirement for unloading the delivery truck onto a two wheeler would reduce the available number of jobs by at least half.  (*PageID* 103.)  The vocational expert also stated that if Seymour required a lawn care operating company that had unloading devices on their trucks, that would only erode the number of jobs by half.  (*PageID* 104.)

**Medical Evidence of Record.**  In addition to physical impairments, the undersigned recognizes that Seymour alleges disability in part because of his mental impairments.  Plaintiff's Statement of Errors, however, focuses primarily on his physical impairments and limitations.  Accordingly, the Court will focus its review of the medical evidence on Seymour's physical impairments and limitations:

Adena Regional Medical Center - Emergency RoomU.  Seymour presented to the emergency room after breaking his right finger while using a hammer at work in July 2008.  (*PageID* 288-93.)  While giving his history to the emergency room physician, Seymour had no other musculoskeletal complaints.  (*PageID* 288.)  Due to a displaced angulated right fourth metacarpal fracture, Seymour underwent an outpatient open reduction K-wire fixation right fourth metacarpal fracture with short arm spica cast.  (*PageID* 318-19.)  Following post surgical therapy, he was released back to work in October 2008.  (*PageID* 304-17.)

Phillip Swedberg, M.D.  On May 10, 2010, Seymour was consultatively examined by Dr. Swedberg on behalf of the state agency.  (*PageID* 459-67.)  Seymour stated that he

4

was unable to work due to low back pain due to a workplace injury ten years prior.
(*PageID* 463.)  He reported that at the time of this injury he was given lumbar support
and told he could do light duty work.  (*PageID* 409.)  Other than this emergency room
visit, he had not seen a doctor for his back pain in the 10 years since his injury.  (*PageID*
409.)  Seymour also reported that he had not had any surgical procedures, cortisone
injections,  chiropractic manipulation, a pain management referral, a neurosurgical
consultation, or physical therapy.  *Id.*  Seymour took no medication for his pain other
than over-the-counter Tylenol.  *Id.*

On examination, Dr. Swedberg found "an obese young man who ambulates with
a normal gait without the use of ambulatory aids, and who was comfortable in both the
sitting and supine positions."  (*PageID* 464.)  Seymour had normal muscle strength with
no evidence of muscle atrophy, no evidence of paravertebral muscle spasm, and
percussion of the lumbar spinous processes was not associated with tenderness.  *Id.*  Dr.
Swedberg reported that Seymour

> made minimal effort to forward bend to 30 degrees, extend to 10 degrees,
> and laterally flex at the waist to 10 degrees bilaterally.  There is no
> evidence of paravertebral muscle spasm, and percussion of the lumbar
> spinous processes is not associated with tenderness.  On examination of
> the spine, straight leg raising is diminished to 30 degrees bilaterally.

*Id.*  Neurological examination was completely normal.  (*PageID* 465.)  Seymour's grasp
strength and manipulative ability were well-preserved bilaterally.  *Id.*  Lumbar spine
X-rays were normal.  (*PageID* 467.)  He diagnosed Seymour with low back pain without
radiculopathy, and exogenous obesity.  (*PageID* 465.)

Dr. Swedberg concluded that Seymour was capable of performing a moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects; he might have difficulty reaching overhead; but has no difficulty grasping and handling objects. *Id.*

William Bolz, M.D./Diane Manos, M.D.  On June 10, 2010, Dr. Bolz, a state agency physician, conducted a physical residual functional capacity assessment based on Seymour's record.  (*PageID* 468-75.)  Dr. Bolz found that Seymour retained the ability to occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk about six hours in an eight-hour workday, sit for about six hours in an eight-hour work day, and push or pull was unlimited.  (*PageID* 469.)  He found Seymour required no postural, manipulative, or environmental limitations.  (*PageID* 470-72.)  Dr. Bolz concluded that Seymour's symptoms were attributable to a medically determinable impairment. (*PageID* 473.)  However, Dr. Bolz found Seymour's symptoms were out of proportion to the expected severity and his statements were considered partially credible. *Id.*  After reviewing Dr. Boyd's records, another state agency physician, Dr. Manos, affirmed Dr. Bolz's assessment on August 23, 2010.  (*PageID* 483.)

Andrew Boyd, M.D.  Seymour treated with primary care physician, Dr. Boyd from August 6, 2010 to February 22, 2012.  (*PageID* 482, 542-52, 559-64, 568-78.)  Initially, Seymour complained of back pain and a ventral hernia.  Seymour noted that his pain had worsened in the past two years, during a time in which he was pouring concrete. The pain was worst in the morning; lifting his right leg caused pain in the right hip and

6

thigh.  Upon examination, Dr. Boyd found a ventral hernia, normal strength, normal range of motion in his back, a negative straight leg raise test, and normal deep tendon reflexes.  Dr. Boyd noted that his lower back pain "limits activity but is not disabling." (*PageID* 482.)  Dr. Boyd ordered a CT scan which showed "no significant hernia." (*PageID* 550-51.)

When seen again on September 7, 2010, Seymour rated his pain at 6/10 on an analog pain scale.  Seymour's weight was 217.6 lbs. Dr. Boyd continued his medication, Flexeril, and ordered an MRI.  (*PageID* 549.)  The lumbar spine MRI taken on September 13, 2010, showed L3-L4 disc space narrowing with a mild diffuse bulge which effaced the thecal sac.  (*PageID* 541-42.)  The radiologist assessed L3-L4 degenerative disc disease with no significant neural foramen or canal stenosis.  *Id.*

On October 18, 2010, Dr. Boyd noted that Seymour declined a pain management referral and was engaging in "drug seeking behavior" in that he "repeatedly asked for a pain pill." (*PageID* 546.)  On November 10, 2010, Seymour complained of right shoulder pain after helping his niece move.  He also complained that his hip and back hurt on long car rides and he had pain with bending.  Examination showed full strength and normal range of motion in both Seymour's back and shoulders.  When assessing Seymour's shoulder pain, Dr. Boyd wrote "I think patient is exaggerating his symptoms and exam.  Most consistent with acute strain."  (*PageID* 545.)

On February 16, 2011, Seymour complained of chest pain and insomnia. Seymour was smoking 1.5 packs of cigarettes daily and was encouraged by Dr. Boyd to

quit. (*PageID* 544.)  In March 2011, a Nuclear Stress test was negative for stress induced ischemia.  (*PageID* 543.)  Examination in April 2011 revealed a normal gait and station, full strength, and normal reflexes.  Dr. Boyd reported that Seymour "rises stiffly."  He prescribed pain medication, Neurontin and continued Flexeril.  (*PageID* 542.)  In May 2011, Seymour noted that he hurt his wrist after throwing wood.  (*PageID* 561.)

On September 1, 2011, Dr. Boyd completed a physical capacity evaluation on Seymour's behalf.  Dr. Boyd opined that Seymour was not able to work an 8-hour day, but could work 0-4 hours, depending on the job.  Seymour could stand/walk up to 4 hours per day for 30 minutes at a time, and sit up to 4 hours per day for 30 minutes at a time.  According to Dr. Boyd, Seymour could lift up to 5 pounds frequently, and up to 10 pounds occasionally, but could never push, pull, or bend.  Dr. Boyd based his finding on Seymour's lower back pain and lumbar degenerative disc disease, but further acknowledged that "exam and MRI mostly unremarkable."  Dr. Boyd also stated that Seymour reported he had very impaired functioning with carrying jugs, mowing, bending, walking up hill, sex, and sleep.  Dr. Boyd  then checked a box that Seymour was "employable."   (*PageID* 558.)

On February 17, 2012, Seymour had another lumbar MRI which was compared to the September 2010 MRI.  The radiologist found "no significant progression of the changes when compared to the prior study," and the abnormalities in his back were characterized as only "mild degenerative changes."  (*PageID* 570-71.)  When seen by Dr.

Boyd on February 22, 2012, he was puzzled by Seymour's complaints of new symptoms without any changes or significant findings on his MRI.  (*PageID* 568.)

Anthony C. Freeman, D.O.  Seymour first saw  Dr. Freeman, a pain management specialist, on January 18, 2011 for chronic low back pain.  Dr. Freeman noted that Seymour's complaints are out of proportion to findings on physical examination.  (*PageID* 556-57.)  Dr. Freeman noted Seymour needed physical therapy first, then epidural steroid injections.  *Id.*

Seymour received lumbar epidural steroid injections from Dr. Freeman on May 31, 2011 and June 15, 2011.  (*PageID* 499-502.)

Adena Regional Medical Center - physical therapy. Seymour attended physical therapy sessions under the diagnosis of lumbago and lumbar strain from January 25, 2011 to March 10, 2011.  (*PageID* 519-41.)  He rated his average pain at 6/10, his least pain was 2-3/10, and his worst pain was with bending and lifting at 10/10.  He could typically sit 30 minutes max but shifted often in his seat; he could drive for an 1 hour if absolutely necessary; he could ambulate for 30 minutes for essential shopping, but then rested due to back pain; he lifted and carried firewood for heating fuel which caused increased pain, required frequent rest breaks, and could carry only small loads; and he was able to shovel only small areas of snow.  *Id.*

On February 15, 2011, Seymour reported his pain level in the 6-8/10 range; he was sore following therapy but got a little relief within 1-2 hours; and when he worked on his car the day before, he aggravated the back pain even more.  (*PageID* 530.)

9

On February 17, 2011, Seymour reported that electronic stimulation gave him relief most for the rest of the day after his last treatment.  The physical therapist recommended purchasing a TENS unit from a pharmacy because it was not covered by his insurance.  It was "felt that he would have improved function at home if he could wear one throughout the day on his lower back." (*PageID* 532.)

After 7 visits, Seymour was discharged because the therapist found he had only temporary relief with treatment, but no carryover pain relief.  (*PageID* 541.)

**Administrative Law Judge's Findings.**  The administrative law judge found that:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2.  The claimant has not engaged in substantial gainful activity since August 1, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: chronic back pain; mood disorder; and borderline intellectual functioning  (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the [administrative law judge] finds that the claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, to sit, with normal breaks, for a total of 6 of 8 hours per day, to stand and walk, with normal breaks, for a total of 6 of 8 hours per day and to push and pull within those limitations.  The claimant can occasionally climb ramps and stairs but

never ladders, ropes or scaffolds.  The claimant can occasionally stoop, kneel, crouch and crawl.  The claimant is limited to simple, routine tasks with no fast paced production pace.

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.   The claimant was born on October 20, 1976 and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(*PageID* 63-72.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is

"'more than a mere scintilla.'"  *Id.  LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir.

1976).  The Commissioner's findings of fact must be based upon the record as a whole.

*Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366

(6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining

whether the Commissioner's decision is supported by substantial evidence, the Court

must "'take into account whatever in the record fairly detracts from its weight.'"  *Beavers*

*v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and*

*Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**

- Plaintiff argues that the administrative law judge failed to accord the opinion of

  his treating primary care physician, Dr. Boyd, that he was limited to a 4 hour

  work day the weight of a rebuttable presumption.  According to Plaintiff, the

  administrative law judge refused to give Dr. Boyd controlling weight and by

  doing so,  "did not address the core issue as to why the treating physician's

  disability opinion was not entitled to the greatness [sic] weight, and should be

  adopted, even if it did not meet the test for controlling weight."  Doc. 11 at

  *PageID* 588.

- Plaintiff also argues that the vocational expert's testimony of "possible" jobs

rather than probable jobs, failed to meet the Commissioner's burden of going forward to

establish other work he could perform.  Plaintiff contends that the vocational expert

12

testified only to possibility, not probability, stating "Possibly a short-term delivery truck driver . . . ." (Tr. 51), and "Possibly landscape, but again with a small company operating, you know, the onsite lawnmowers ... " (Tr. 52).  Testimony of mere possibility reduced the Commissioner's burden to virtual non existence."  Doc. 11 at *PageID* 589.

**Analysis.**  <u>Treating Physician: Legal Standard.</u> A treating doctor's opinion[1] on the issue of disability is entitled to greater weight than that of a physician who has examined Plaintiff on only one occasion or who has merely conducted a paper review of the medical evidence of record. *Hurst v. Schweiker*, 725 F.2d 53, 55 (6th Cir. 1984); *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983).  The Commissioner's regulations explain that Social Security generally gives more weight to a treating doctors' opinions because treators are usually "most able to provide a detailed, longitudinal picture" of the claimant's medical impairments.  20 C.F.R. §

---

[1]The Commissioner's regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Treating sources often express more than one medical opinion, including "at least one diagnosis, a prognosis and an opinion about what the individual can still do." SSR 96-2p, 1996 WL 374188, at *2. When an administrative law judge fails to give a good reason for rejecting a treator's medical opinion, remand is required unless the failure does not ultimately affect the decision, *i.e.*, the error is *de minimis*. *Wilson*, 378 F.3d at 547. So reversible error is not committed where the treator's opinion "is patently deficient that the Commissioner could not possibly credit it;" the administrative law judge's findings credit the treator's opinion or makes findings consistent with it; or the decision meets the goal of 20 C.F.R. § 404.1527(d)(2) but does not technically meet all its requirements. *Id. See, Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013).

404.1527(c)(2).  When the treating doctor's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record" the Commissioner "will give it controlling weight."  *Id.*

Even though a claimant's treating physician may be expected to have a greater insight into his patient's condition than a one-time examining physician or a medical adviser, Congress specifically amended the Social Security Act in 1967 to provide that to be disabling an impairment must be "medically determinable."  42 U.S.C. §423(c)(1)(A).  Consequently, a treating doctor's opinion does not bind the Commissioner when it is not supported by detailed clinical and diagnostic test evidence.  *Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004);*Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779-780 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1983); *Halsey v. Richardson*, 441 F.2d 1230, 1235-1236 (6th Cir. 1971); *Lafoon v. Califano*, 558 F.2d 253, 254-256 (5th Cir. 1975). 20 C.F.R. §404.1513(b), (c), (d), 404.1526(b), and 404.1527(a)(1)[2].

The Commissioner's regulations provide that she will generally "give more

---

[2]Section 404.1527(a)(1) provides:
You can only be found disabled if you are unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* §404.1505. Your impairment must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *See* §404.1508.

weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(c)(1). When a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

When the treating source's opinion is well-supported by objective medical evidence and is not inconsistent with other substantial evidence, that ends the analysis. 20 C.F.R. § 404.1527(c)(2); Social Security Ruling 96-2p. *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013). The Commissioner's regulations require decision-makers "to provide 'good reasons' for discounting the weight given to a treating-source opinion. [20 C.F.R.] § 404.1527(c)(2)."[3] *Gayheart*, 710 F.3d at 375.

The Commissioner has issued a policy statement about how to assess treating sources' medical opinions. Social Security Ruling 96-2p. It emphasizes:

1.  A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion.

2.  Controlling weight may be given only in appropriate circumstances to medical opinions, *i.e.*, opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources.

3.  Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.

---

[3]Section 404.1527(c)(2) provides, in relevant part: "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."

4.      Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is "not inconsistent" with the other substantial evidence in the case record.

5.      The judgment whether a treating source's medical opinion is well supported and not inconsistent with the other substantial evidence in the case record requires an understanding of the clinical signs and laboratory findings and what they signify.

6.      If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.*, it must be adopted.

7.      A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator.

The focus at this step is solely on whether the treating-source opinion is well-supported by objective medical evidence and not inconsistent with other substantial evidence. In making this determination the factors for assessing the *weight* to give to the medical opinions of any medical source, 20 C.F.R. § 404.1527(c), are not used. These come into play only when there are good reasons not to give the

treating-source opinion controlling weight. 20 C.F.R. § 404.1527(c)(2)[4]; *Gayheart*, 710

F.3d at 376.

     If there are good reasons to find that the treating-source opinion is not

controlling, then the decision-maker turns to evaluating all the medical source evidence

and determining what weight to assign to each source, including the treating sources. [5]

_____

    [4]Section 404.1527(c)(2) provides, in relevant part:
    If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion.

(Emphasis added.)

    [5]Even when the treating source's opinion is not controlling, it may carry sufficient weight to be adopted by the Commissioner:

    Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 404.1527. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p.

The Commissioner's regulations require the decision-maker to considers the length of the relationship and frequency of examination; nature and extent of the treatment relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the treating source's specialization; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and the extent to which the source is familiar with other information in the case record relevant to decision.  20 C.F.R. § 404.1527(c)(1) through (6).  Subject to these guidelines, the Commissioner is the one responsible for determining whether a claimant is disabled.  20 C.F.R. § 404.1527(e).

The case law is consistent with the principals set out in Social Security Ruling 96-2p.  A broad conclusory statement of a treating physician that his patient is disabled is not controlling.  *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).  For the treating physician's opinion to have controlling weight it must have "sufficient data to support the diagnosis." *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 536, 538 (6th Cir. 1981); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  The Commissioner may reject the treating doctor's opinions when "good reasons are identified for not accepting them." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); 20 C.F.R. § 404.1527(c)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"); *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). Even when the Commissioner determines not to give a treator's opinion controlling weight, the decision-maker must evaluate the treator's

18

opinion using the factors set out in 20 C.F.R. § 404.1527(c)(2). *Wilson*, 378 F.3d at 544;

*Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009). There remains a rebuttable

presumption that the treating physician's opinion "is entitled to great deference."

*Rogers v. Commissioner of Social Security*, 486 F.3d 234, 242 (6th Cir. 2007); *Hensley*, above.

The Commissioner makes the final decision on the ultimate issue of disability. *Warner v.*

*Commissioner of Social Security*, 375 F.3d at 390; *Walker v. Secretary of Health & Human*

*Services*, 980 F.2d 1066, 1070 (6th Cir. 1992); *Duncan v. Secretary of Health and Human*

*Services*, 801 F.2d 847, 855 (6th Cir. 1986); *Harris v. Heckler*, 756 F.2d at 435; *Watkins v.*

*Schweiker*, 667 F.2d 954, 958 n.1 (11th Cir. 1982).

Treating Physician: Discussion.  The administrative law judge did not commit

error in refusing to give Drs. Boyd's opinion controlling or great weight.  As the

administrative law judge explained:

> The opinion of Andrew Boyd, M.D. is also given little weight.  First, it is
> unclear how often Dr. Boyd actually treated the claimant.  Further, Dr.
> Boyd's opinion is contradictory and the limitations mentioned appear to
> be based on the claimant's own reported symptoms as opposed
> to any objective findings.  Dr. Boyd stated that his examination and testing
> were unremarkable and that the claimant was employable.  This was a
> reiteration of a statement he made in 2010 in which he said that the
> claimant had some limitations but was not disabled (Although a decision
> reserved to the Commissioner, this statement does not lend credence to
> the claimant's allegations).  However, he also stated that the claimant
> could lift and carry no more than 10 pounds and could never push, pull or
> bend.  Dr. Boyd further said the claimant could only stand, walk or sit for
> a half hour at a time without interruption.  It is unclear what this is based
> on given the doctor's "unremarkable" examination of the claimant.  The
> functional limitations are not supported by Dr. Boyd's clinical or
> laboratory findings.

(*PageID* 69-70.) (citation to record omitted).

In addition, the opinion of Dr. Boyd runs counter to the other physician's who assessed Seymour's physical residual functional capacity. (*PageID* 468-75, 483.) Further, there are no clinical findings or test results in Seymour's treatment records that support Dr. Boyd's opinion that Seymour could only stand/walk up to 4 hours per day for 30 minutes at a time, and sit up to 4 hours per day for 30 minutes at a time; and lift up to 5 pounds frequently, and up to 10 pounds occasionally. (*PageID* 558.) Two MRIs found no neural formaen or canal stenosis and only mild degenerative changes. (*PageID* 541-42 and 570-71.) Thus, the opinion of Dr. Boyd is not entitled to controlling weight. *See* 20 C.F.R. § 404.1527(c)(2). In addition, while the administrative law judge did not state in extremely great detail his analysis of all the factors in 20 C.F.R. § 404.1527(c)(2), he did fully and clearly articulate the reasons why he rejected Dr. Boyd's opinions. His explanation does reflect an analysis of factors included in the regulations.

Plaintiff asserts that Dr. Boyd's disability opinion is consistent with Seymour's complaints of back pain. Doc. 11 at *PageID* 589. This contention lacks merit as a matter of law because the Regulations required the administrative law judge to consider Dr. Boyd's opinions in light of the evidence of record, including Seymour's daily activities. *See* 20 C.F.R. §§404.1527(b)-(e). Substantial evidence supports the administrative law judge's findings because a review of the medical record reveal that the administrative law judge reached reasonable conclusions about Seymour's daily activities. These reasonable findings included notations in the medical record showing that Seymour

reported to Dr. Swedberg that he had not had any surgical procedures, cortisone injections, chiropractic manipulation, a pain management referral, a neurosurgical consultation, or physical therapy. (*PageID* 409.) Seymour reported to Dr. Boyd during his treatment that he poured concrete (*PageID* 482); helped his niece move (*PageID* 545); and threw wood. (*PageID* 561.)

Accordingly, I do not find that the administrative law judge erred in rejecting the opinion of Dr. Boyd.

**Vocation Expert Testimony.** Plaintiff also argues that the vocational expert's testimony was not sufficient to satisfy the Commissioner's burden at Step 5 of the sequential evaluation to show that other work remained available to Plaintiff. Plaintiff contends that the vocational expert's testimony of "possible" jobs rather than probable jobs, failed to meet the Commissioner's burden of going forward to establish other work he could perform. Plaintiff contends that the vocational expert testified only to possibility, not probability, stating "Possibly a short-term delivery truck driver ... " (Tr. 51), and "Possibly landscape, but again with a small company operating, you know, the onsite lawnmowers ... " (Tr. 52). Plaintiff argues that "[t]estimony of mere possibility reduced the Commissioner's burden to virtual non existence." Doc. 11 at *PageID* 589. This contention lacks merit. A review of the vocational expert's testimony reveals that she plainly stated 2,895,700 (or 1,447,850 when reduced by cross-examination from Seymour's counsel) total light jobs would be available to a hypothetical person with Plaintiff's residual functional capacity for a limited range of light work. (*See PageID* 101-

21

03.)  Although the expert used the phrasing "possibly," this did not eliminate or nullify her testimony about the existence of jobs that exist for someone with Seymour's residual functional capacity for a limited range of light work.

Accordingly, Plaintiff's challenges to the vocational expert testimony lack merit.

**Conclusions.** From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED**.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

       s/Mark R. Abel_____
       United States Magistrate Judge